**UNITED STATES of America, Plaintiff,**

v.

**ONE 1970 BUICK RIVIERA, SERIAL NO. 949870H920701, Defendant.**

No. 4–73–Civ. 297.

United States District Court, D. Minnesota, Fourth Division.

Dec. 12, 1973.

---

Earl P. Gray, Ass't. U. S. Atty., Minneapolis, Minn., for plaintiff.

Keith D. Kennedy, Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

LARSON, District Judge.

This instant civil cause of action for forfeiture is brought on pursuant to 21 U.S.C. § 881, 49 U.S.C. § 782, and 19 U.S.C. § 1595(a) against one 1970 Buick Riviera which was allegedly unlawfully used and intended for use in facilitating the transportation and concealment of heroin which was to be unlawfully imported and introduced into the United States contrary to 18 U.S.C. § 545 and 21 U.S.C. § 952.

In a hearing before this Court on November 26, 1973, claimant William C. Henri moved for summary judgment. The following facts have been stipulated to between the parties:

(a) On February 13, 1972, William C. Henri engaged Donald Rasmussen to go to Mexico to acquire heroin.

(b) On February 14, 1972, William C. Henri, using the subject vehicle, drove Donald Rasmussen to the Minneapolis-St. Paul International Airport.

(c) At the airport, Rasmussen was given five thousand dollars ($5,000.00) for the purchase of the heroin in Mexico.

(d) According to Rasmussen, the money was in small denominations and wrapped in bank wrappers. Such wrappers were found in the subject vehicle when it was seized by Government agents.

(e) William C. Henri is the owner of the subject automobile.

The principal statute upon which the Government relies, and the one which

the Government maintained at oral argument was much broader in scope than the other two, is 21 U.S.C. § 881. It provides in pertinent part as follows:

"(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them.

\* \* \* \* \* \*

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) . . . ."[1]

The heroin involved in the instant case would satisfy the "controlled substances" requirement set forth in paragraph (1) of § 881.

The Supreme Court in United States v. One 1936 Model Ford V–8 DeLuxe Coach, 307 U.S. 219, 226, 59 S. Ct. 861, 865, 83 L.Ed. 1249 (1939), has provided the perspective from which courts may view forfeiture proceedings:

"Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law. Farmers' & M. National Bank v. Dearing, 91 U.S. 29, 33–35."[2]

While forfeiture proceedings are not of course, criminal in nature, their effect, when invoked, is to permanently deprive the owner of the forfeit property of its use. To the extent that the owner of forfeit property is caused loss and inconvenience resulting from the commission of certain offenses, the forfeiture provisions are punitive in effect[3] and are subject to careful scrutiny by the Court. Indeed, the legislative history behind § 881 would indicate that a court should read the statute strictly. House Rep.No.91–1444, 3 U.S.Code Cong. & Admin.News, pp. 4566, 4623 (91st Cong. 2nd Sess. 1970), indicates that conveyances are subject to forfeiture if they are "used, or intended for use, to transport or conceal such violative property."[4]

---

1. 49 U.S.C. § 782 provides:
   "Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited . . . ."
   49 U.S.C. § 781 provides:
   "(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle or aircraft; (2) to conceal or possess any contraband article in or upon any vessel, vehicle, or aircraft, or upon the person of anyone in or upon any vessel, vehicle or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.
   (b) As used in this section, the term 'contraband article' means—
   (1) Any narcotic drug which has been or is possessed with intent to sell or offer for sale in violation of any laws or regulations of the United States dealing therewith; or which has been acquired or is possessed, sold, transferred, or offered for sale, in violation of any laws of the United States dealing therewith . . . ."

19 U.S.C. § 1595(a) provides:
   "(a) Except as specified in the proviso to section 1594 of this title, every vessel, vehicle, animal, aircraft, or other thing used in, to aid in, or to facilitate, by obtaining information or in any other way, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law, whether upon such vessel, vehicle, animal, aircraft, or other thing or otherwise, shall be seized and forfeited."

2. *See also* Bramble v. Kleindienst, 357 F. Supp. 1028, 1030 (D.Colo.1973).

3. *See* Annot. 50 A.L.R.3rd 172, 175 (1973).

4. *See also*, House Rep.No.2751, 2 U.S.Code Cong.Serv., p. 2952 (81st Cong.2nd Sess. 1950):
   "Section 2 of the act (U.S.C., title 49, sec. 782) provides, under certain conditions, for the seizure and forfeiture of vessels, vehicles, and aircraft carrying the contraband narcotics defined in subsection 1(b)(1) in violation of subsection 1(a)."
   *See also*, Annot. 50 A.L.R.3rd 172, 173 (1973).

■ Counsel has not provided, nor has this Court found, any cases interpreting the facilitation provisions of 21 U.S.C. § 881. Those which counsel has cited in connection with the other statutes relied upon, however, provide guidance in approaching the instant situation. At the outset it is helpful to look to United States v. One Dodge Coupe, 43 F.Supp. 60 (S.D.N.Y.1942), in which the Court stated:

"It can readily be seen that whether any particular connection of a vehicle with contraband, where the contraband is not in the vehicle or in the possession of the occupant of the vehicle, constitutes facilitation, is a question of degree, which is in turn a question of fact not readily susceptible to generalization." 43 F.Supp. at 61.

After carefully considering all of the arguments supplied in briefs and oral argument by counsel, it is clear that use of the automobile in this case does not amount to facilitation.

Platt v. United States, 163 F.2d 165 (10th Cir. 1947), and Howard v. United States, 423 F.2d 1102 (9th Cir. 1970), both interpret the term "facilitation" and provide the basis necessary for this Court's holding. In Platt, the court, relying on Pon Wing Quong v. United States, 111 F.2d 751 (9th Cir. 1940), defines "facilitation."

"The word 'facilitate' is one of common use in business and transactions between ordinary persons. It is a term of everyday use, with a well understood and accepted meaning. Webster defines 'facilitate' as meaning: 'To make easy or less difficult; to free from difficulty or impediment; as to facilitate the execution of a task. (2) To lessen the labor of; to assist; . . . .' Funk & Wagnall's New Standard Dictionary defines 'facilitate' as follows: 'To make more or less difficult; free more or less completely from obstruction or hindrance; lessen the labor of.' The word 'facilitate' appears in many federal statutes.

In none of them is it defined, but the presumption is that when Congress used this word, it ascribed to it its ordinary and accepted meaning. What is then meant by the use of the word 'facilitate' is that if an automobile is used to assist in the commission of the crime, it is subject to forfeiture." 163 F.2d at 166–167.

The court in Platt found that in a charge of an illegal purchase of narcotics, the car neither made the accomplishment of the purchase easier, nor freed it from obstruction. The car was simply the means of locomotion employed to go to the scene of the purchase. 163 F.2d at 167. Similarly in Howard, the seized car had been driven to a place where another car containing contraband was picked up. Judge Hufstedler, relying on Platt, found that the seized car was merely a means of locomotion by which the suspected violator reached the site of the illegal activity. 423 F.2d at 1103.

As this Court observed earlier, § 881 is broadly drawn. The facts in this case, however, do not justify a finding that the use of the automobile in Minnesota made a heroin sale and importation from Mexico less difficult. The contraband was never in the car. Neither the negotiations for the sale of nor the payment for the drugs between the buyer and the seller took place in the car. The car did not even proceed to the site of the illegal activity as in Howard. Even looking at the facts in a light most favorable to the Government, the most that can be said is that the money intended for use in the future purchase of heroin changed hands between a purchaser and his agent, and that the agent rode in the car on the first link in a chain of transportation to the actual purchase of the heroin in Mexico. Neither in distance, time, nor circumstance was this car involved "in any manner" in the transportation, sale, receipt, or possession, or concealment to such degree that the law should attach significance to the act. In United States v. One 1965 Cadillac 2-Door Coupe, 260 F. Supp. 761 (W.D.Pa.1966), the Court

held for the claimant because the transportation was not a substantial incident in the traffic of contraband. The same rationale applies here.[5]

In United States v. 1957 Lincoln Premier, 265 F.2d 734, 736 (7th Cir. 1959), the Court found that the person whose activities triggered the forfeiture had the contraband narcotics with him and that the car was used to facilitate the narcotics transportation.[6] The Court further stated that even if the narcotics had not traveled with him, the defendant automobile would have been used to facilitate the receipt or possession of narcotics since the person rode in the car to the scene of the transaction. 265 F.2d at 736. This language is not directly applicable to the facts of the instant case because of the remoteness of the automobile's activities with the actual heroin purchase in Mexico. The Court notes, however, that the *Lincoln Premier* case appears to conflict with Judge Hufstedler's holding in *Platt*, a holding that this Court perceives to be more in accord with previously recited policies concerning forfeiture.

In United States v. One 1950 Buick Sedan, 231 F.2d 219 (3rd Cir. 1956),

again the Court found that there was a "reasonable, almost compelling inference" that the seller used the car in question to carry the contraband. 231 F.2d at 222. Moreover, there was no question in that case that the negotiations for the sale and delivery of the drugs took place in the defendant automobile. 231 F.2d at 221.[7] Similarly in United States v. One 1950 Chevrolet 4-Door Sedan, 215 F.2d 482 (10th Cir. 1954), the automobile was used to take the prospective purchaser to and from the source of the narcotics and the sale was negotiated in the defendant automobile. Each of the above three cases involved either actual transportation of the drug in question or negotiations leading up to the sale of the drug.[8] Such is not the case before this Court.

It is therefore ordered:

That plaintiff deliver possession of One 1970 Buick Riviera Serial No. 494870H920701 in the same condition as when it was seized by plaintiff.

█ Under the provisions of 28 U.S.C. § 2465 costs must be paid by the claimant of seized property unless it appears that there was not "reasonable cause" for the seizure. It appears here

---

5. In United States v. One 1965 Cadillac 2-Door Coupe, 260 F.Supp. 761 (W.D.Pa. 1966), the Court curiously cites, and the Government here in oral argument has noted, Justice Holmes' statement in his dissent in Hammer v. Dagenhart, 247 U.S. 251, 279–280, 38 S.Ct. 529, 534, 62 L.Ed. 1101 (1918), that "[i]t does not matter whether the supposed evil precedes or follows the transportation. It is enough that in the opinion of Congress the transportation encourages the evil." While the language cited would not disturb this Court's finding here if applicable, its citation in connection with transportation of narcotics under the three statutes here invoked is of questionable relevance. In *Hammer* the Court held that congressional power to prohibit interstate commerce was limited to articles which in themselves were harmful, and that, therefore, Congress could not control harmless products in interstate commerce manufactured by child labor under oppressive conditions. Mr. Justice Holmes dissented on the ground that that which moves in interstate commerce may be innocent of itself yet subject to prohibition because of the circum-

stances of its manufacture. In this context the quoted sentence was expressed. *Hammer* was later overruled in United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1940), on grounds similar to those expressed by Mr. Justice Holmes.

6. *See also* United States v. Oldsmobile Coupe Automobile, 67 F.Supp. 686 (S.D.Cal.1946); *cf.* United States v. One 1951 Oldsmobile Sedan Model 98, Motor No. 8C 6692, 126 F. Supp. 517 (D.Conn.1954).

7. In United States v. One 1951 Oldsmobile Sedan Model 98, Motor No. 8C 33349, 126 F.Supp. 515 (D.Conn.1954), the defendant car was forfeited after payment for heroin delivered two days earlier was made by agents who had received the heroin, to the seller of the heroin. The cited case is distinguishable because the sale was consummated in the automobile.

8. Of course, the instant case is clearly distinguishable as well from United States v. One 1951 Oldsmobile Sedan, 129 F.Supp. 321 (E.D.Pa.1955), in which the money passed from buyer to seller and the narcotics were delivered to the buyer in the sedan.

that the Government had reasonable cause to believe that the seized automobile was used to facilitate a violation of Federal narcotics laws. Because, however, almost 20 months have passed between the time of seizure and the present, this Court is of the opinion that the claimant should not be forced to shoulder the entire burden of the costs incurred in keeping the seized automobile. Seven months is certainly ample time for the Government to complete the forfeiture action.

It is therefore ordered:

That claimant pay the costs incident to the storage of the vehicle for a period of seven months and that the Government pay the remainder of those charges.

It is further ordered:

That the principal and sureties upon the Bond of Claimant of Seized Goods for Costs of Court filed herein are discharged and that the Clerk of this Court return to claimant the sum of Two Hundred Fifty Dollars ($250.00) deposited on his behalf as and for said bond.

Claimant Henri's motion for summary judgment is granted. The Government's motion for summary judgment is denied.