**UNITED STATES of America,
Plaintiff,**

v.

**ONE 1974 CADILLAC ELDORADO SE-
DAN, SERIAL NO. 6L47S4Q407966,
Defendant.**

**No. 74 Civ. 4508.**

United States District Court,
S. D. New York.

Dec. 30, 1975.

Thomas J. Cahill, U. S. Atty., S.D. N.Y., New York City, for plaintiff; Peter C. Salerno, Asst. U. S. Atty., of counsel.

Michael P. Direnzo, New York City, for claimant.

OPINION

EDWARD WEINFELD, District Judge.

The government seized and seeks for-feiture of a Cadillac car pursuant to 21 U.S.C., section 881(a), which provides:

"The following shall be subject to forfeiture to the United States and no property right shall exist in them:

· · · · ·

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [contraband]."

The owner of the seized car is Ivan Santiago, the claimant herein. On June 7, 1974, he drove the vehicle, in which also was seated Hiram "Pete" Montanez, to 305 East 24th Street, New York City, where one Arlene Carlton resided. They left the car and entered the apartment, where Santiago and Montanez discussed with Joseph P. Salvemini, an undercover agent, a sale of cocaine. They failed to agree on the mechanics of the proposed transaction and their negotiations ter-minated inconclusively. Both Santiago and Montanez then left the area by the Cadillac car. Three days later, on June 10, Montanez alone met with Salvemini at a restaurant at Broadway and 92nd Street, New York City, where they agreed upon a sale of one-eighth kilo-gram of cocaine for $4,000, and later that evening Montanez delivered the co-caine to Salvemini at the Carlton apart-ment. Santiago was not present on June

10 on either occasion, that is, when the sale of the one-eighth kilogram was negotiated or when it was delivered. The evidence does not establish that the Cadillac car transported Montanez to the place of negotiation or the place of delivery on June 10.

On June 11, 1974, Montanez and Salvemini again met at the restaurant at Broadway and 92nd Street, New York City, whereupon Montanez agreed to sell to the undercover agent a kilogram of cocaine. Santiago was not present. That evening, after leaving Santiago's apartment and while driving a car (not the Cadillac car here at issue) to meet Salvemini to consummate the sale of the kilogram of cocaine negotiated earlier that day, Montanez was arrested and the cocaine was found in the car he was driving. Later that evening Santiago was arrested. The following day, pursuant to a search warrant, his apartment was searched and a quantity of cocaine, marijuana, narcotics equipment and $26,629 in currency were confiscated. Later that day, June 12, 1974, Santiago's Cadillac car was seized. The sole reason for its seizure was its use five days earlier to transport Santiago and Montanez to the East 24th Street premises where the meeting had been held and the negotiations for the initial sale of cocaine had ended inconclusively.

Santiago was indicted, together with Montanez and Carlton, charged with conspiracy to distribute narcotics. Santiago pleaded guilty and acknowledged that he and others met at the Carlton apartment on June 7, 1974, and there negotiated for the sale of cocaine that Montanez "made the next day."[1] Thus the issue is whether the Cadillac car that transported Santiago and Montanez to the premises where they discussed a proposed sale of cocaine, which meeting was an overt act

under the indictment, was a conveyance "used, or . . . intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" the cocaine.

It is not contended that either Santiago or Montanez planned to make delivery of the cocaine at the premises on East 24th Street on June 7, the day they drove the car there to negotiate with the undercover agent. So, too, the government does not contend, nor do the facts support a claim that the car was used on that occasion to transport the illicit drugs or as a place to negotiate the sale or as a decoy or lookout vehicle in connection with the transaction. Its sole use was to transport Santiago and Montanez to the site of the area where the proposed purchase was first discussed.

 The government contends that this use of the vehicle facilitated the subsequent sale within the meaning of the statute. However, where the contraband is not in the vehicle, what "constitutes 'facilitation' is a question of degree, which is in turn a question of fact not readily susceptible to generalization."[2] The mere fact that a vehicle is used as an ordinary means of transportation to convey one to the site of a crime does not necessarily mean that its use was to facilitate the illicit transaction so as to require forfeiture of the vehicle.[3] More must be shown. I agree with the conclusion of Judge Bownes, who recently explored the matter at length, that to be forfeited a vehicle must have some substantial connection to, or be instrumental in the commission of, the underlying activity which the statute seeks to prevent.[4]

 In the instant case, other than as a means of normal transportation of Santiago and Montanez to East 24th

1. The first sale was made on June 10, not June 8.

2. *United States v. One Dodge Coupe,* 43 F. Supp. 60, 61 (S.D.N.Y.1942) (Rifkind, J.).

3. *Cf. Simpson v. United States,* 272 F.2d 229 (9th Cir. 1959); *United States v. One*

*1952 Ford Victoria,* 114 F.Supp. 458, 460 (N.D.Cal.1953).

4. *United States v. One 1972 Datsun,* 378 F. Supp. 1200 (D.N.H.1974).

Street, the car had no relationship, direct or indirect, to the narcotics transactions which were consummated three and four days thereafter. It had no more impact upon the contemplated transaction than if they had walked there, travelled there from outside the city by plane and landed at a heliport on East 23rd Street, or reached their destination by subway.

The decree of forfeiture is denied, and the car shall be released to the claimant.