**UNITED STATES of America, Plaintiff,**

**v.**

**ONE 1975 MERCURY MONARCH SERIAL NO. 5E35L539729, Defendant In Rem.**

**No. 75 Civ. 4857–CSH.**

United States District Court, S. D. New York.

Oct. 5, 1976.

---

Robert B. Fiske, Jr., U. S. Atty., Victor J. Zupa, Asst. U. S. Atty., New York City, for the United States.

John G. Nicholas, Flushing, N. Y., for defendant in rem and for claimant Ramos.

## MEMORANDUM AND ORDER

HAIGHT, District Judge.

This is an action by plaintiff, the United States of America, pursuant to 21 U.S.C. § 881, for the forfeiture of the defendant in rem, one 1975 Mercury Monarch, Serial No. 5E35L539729. Trial was held to the Court without a jury on August 25, 1976. On the basis of the evidence admitted at the trial, I make the following Findings of Fact:

1. At all pertinent times, the Monarch was owned by the claimant, Ephraim Ramos.

2. On September 6, 1975, Ramos shipped four crates of marijuana from Puerto Rico to New York, by air freight, designating as consignee in the shipment contract one "Edwin Rays, 1115 Jerome Avenue, Bronx, New York".

3. Agents in New York of the Drug Enforcement Administration ("DEA") had received information of this shipment. Accordingly they made arrangements to intercept the crates at John F. Kennedy Airport, and to set up a "controlled delivery". Under this procedure, DEA and other law enforcement officers intercept the shipment in question, disguise themselves as delivery men, and deliver the shipment to the indicated address, in order to see what happens next, and whether the opportunity for further arrests may arise.

4. On September 8, 1975, DEA agents, disguised as employees of Airlift International, Inc., loaded the crates on an Airlift International truck and delivered them to the address as 1115 Jerome Avenue, in the Bronx. The truck was followed by other DEA agents.

5. The truck arrived at the Bronx address shortly before 3:30 p. m. on September 8. Shortly thereafter, one James Connolly accepted delivery of the four crates of marijuana, and was placed under arrest.

6. DEA agents kept watch over the Jerome Avenue address. At about 4:00 p. m., the Mercury Monarch in suit arrived, parked directly in front of 1115 Jerome Avenue, and claimant Ramos emerged from the vehicle. Ramos approached the front

doorway of 1115 Jerome Avenue, engaged in a short conversation with Connolly, and then returned to the Monarch. As he got into the Monarch, Ramos was placed under arrest by law enforcement officers. Only two to three minutes had elapsed from the time Ramos left the vehicle until he was arrested.

7. Immediately upon his arrest, Ramos was searched by a DEA agent. A folded dollar bill containing cocaine was found in his wallet, and a clear plastic vial with a black top and spoon attached, also containing cocaine, was found in his pants pocket. Several minutes thereafter, another DEA agent searched the Monarch. This search disclosed a green suitcase in the trunk, which was empty but for a residue of marijuana.

8. The nature of the substances found on the person of Ramos (cocaine) and in the trunk of the Monarch (marijuana residue) was established by credible evidence given by DEA and other officers on the scene, and by Government laboratory technicians to whom these substances had been delivered for analysis.

9. Ramos, although present in the courtroom at the trial, and represented by counsel, did not testify. However, the Court received in evidence his answers to interrogatories propounded by the Government. Interrogatory number 20 inquired as to the reasons for Ramos's claim that the Monarch was not subject to forfeiture. The answer to that interrogatory reads as follows:

"I was in Puerto Rico to visit my mother, and at that time I was given a sum of money to ship four crates from Puerto Rico to New York. I was told they contained electric parts. I knew there had to be something wrong, since I received money to ship the crates, but I did not know there was marihuana in the crates. I first learned that there was marihuana in the crates by the Plaintiff. *On September 8, 1975, I was visiting the premises of Jerome Reis, to whom I was told to ship and check if same arrived.* I had absolutely no intention of transporting any of the crates in the Defendant In Rem vehicle. This is easily established, as it would be impossible for one of the crates to fit in the back of Defendant In Rem vehicle, or its trunk. The Plaintiff possessed the crates and even if destroyed, they have the dimensions and can verify that none of the creates would fit in the Defendant In Rem vehicle or its trunk." (emphasis added).

10. It further appears from Ramos's answers to interrogatories (No. 21), and other evidence admitted on the trial, that Ramos pleaded guilty to one count of an indictment returned in the United States District Court for the District of Puerto Rico, namely, a charge of possession, with intent to distribute, the marijuana contained in the four crates which had been shipped from Puerto Rico to New York, and which have been referred to in the preceding Findings of Fact.

### *The Applicable Principles of Law*

The substantive statute governing this case is 21 U.S.C. § 881(a)(4), which provides for the forfeiture to the United States of:

"All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) [controlled substances] . . ."

In addition, 19 U.S.C. § 1615 is of procedural significance, in respect of the burden of proof. Under that statute, in forfeiture proceedings, where the vehicle is claimed by any person, "the burden of proof shall lie upon such claimant . . ."

It is well settled that, as the result of the interaction of these two statutes, the Government bears the initial burden of showing probable cause for the institution of the suit for forfeiture. Upon such a showing, the burden of absolving the vehicle from culpability rests upon the claimant. *United States v. One 1971 Porsche,* 364 F.Supp. 745 (E.D.Pa.1973); *United States v. One 1972 Toyota II,* 505 F.2d 1162 (8th Cir. 1974).

■ The Government filed its complaint for forfeiture on October 2, 1975. I conclude that the Government has demonstrated a sufficient showing of probable cause, as of that date. Cocaine was found on Ramos's person immediately after he emerged from the Monarch; traces of marijuana were found in a suitcase in the trunk of the vehicle itself. In addition, Ramos was identified as the shipper on the airline contract of carriage, pursuant to which the four crates containing marijuana were consigned to the address at 1115 Jerome Avenue; and Ramos arrived on the scene of that delivery shortly after the delivery had been accomplished. These factors are all significant on the question of probable cause, in view of the provisions in 21 U.S.C. § 881(a)(4) that vehicles are subject to forfeiture if they are used, not only to "transport" a controlled substance, but also "to facilitate the . . . sale, receipt . ." of controlled substances.

It is accordingly entirely clear that Ramos bore the burden on the trial of demonstrating the vehicle's lack of culpability. It is equally evident that, in view of Ramos's failure to introduce any evidence at all, that burden has not been met.

■ Even if the burden of proof were upon the Government to sustain forfeiture, it would have met that burden on the evidence in the case at bar. First, the Monarch is subject to forfeiture under 21 U.S.C. § 881 because it was used "to transport" controlled substances, namely, cocaine (on the person of Ramos) and marijuana (traces of which were found in the trunk of the vehicle). The evidence compels the inference that Ramos had cocaine on his person at the time he drove up to the Jerome Avenue address in the Monarch. In view of the sweeping language of the forfeiture statute, it is of no legal significance that the amounts of controlled substances in question were relatively small; or that the cocaine may have been intended for Ramos's own personal use, and not intended for sale or resale to others. *United States v. One 1971 Porsche, supra,* at 364 F.Supp. pp. 748–749.

Secondly, the Monarch is subject to forfeiture under 21 U.S.C. § 881 because it was used "to facilitate the transportation, sale, receipt . . ." of the marijuana which Ramos had shipped from Puerto Rico to the Jerome Avenue address.

■ Ramos drove the Monarch to the Jerome Avenue address in order, in his own words, "to check if same [that is, the four crates of marijuana] arrived." Under the cases construing the pertinent statute, such use of the vehicle was sufficiently closely related to the transportation, sale, and receipt of the marijuana to constitute "facilitation" as that concept is employed in the statute.

The facilitation question is the only one which claimant Ramos addresses in his post-trial memorandum. It is quite true that, in a number of cases, the forfeiture of a vehicle has been denied, even though the transportation or sale of narcotics was somehow involved in the case. In *United States v. One 1970 Buick Riviera,* 374 F.Supp. 277 (D.Minn.1973), the heroin in question was purchased in Mexico. The Government sought forfeiture of a vehicle which was used by its owner in Minnesota, to drive another individual (who was to acquire the heroin in Mexico) to the Minneapolis-St. Paul Airport, the owner of the vehicle giving the purchase money to the other individual at the airport. The Court denied forfeiture, stating its rationale as follows:

> "Even looking at the facts in a light most favorable to the Government, the most that can be said is that the money intended for use in the future purchase of heroin changed hands between a purchaser and his agent, and that the agent rode in the car on the first link in a chain of transportation to the actual purchase of the heroin in Mexico. Neither in distance, time, nor circumstance was this car involved 'in any manner' in the transportation, sale, receipt, or possession, or concealment to such degree that the law should attach significance to the act." 374 F.Supp. at 280.

The Court in *United States v. One 1970 Buick Riviera* relied upon *Platt v. United*

*States,* 163 F.2d 165 (10th Cir. 1947), and *Howard v. United States,* 423 F.2d 1102 (9th Cir. 1970). The present claimant also places considerable reliance upon *Platt.* In that case, a daughter who was a dope addict used her mother's car to go to the drug store to make an illegal purchase of morphine; the mother did not know that the car would be used for that purpose. The Tenth Circuit denied forfeiture, holding that such use of the vehicle did not constitute facilitation of the sale:

> "The use of the automobile did not make the accomplishment of the purchase more easy or free it from obstructions or hindrance, or make the sale any less difficult. It was merely the means of locomotion by which Blanche Cooper went to the store to make the purchase. Its use enabled her to get to the store more quickly than if she had walked or had used a slower means of transportation. But the argument that this facilitated the purchase disregards the ordinary and accepted meaning of the word when applied to the sale." 163 F.2d at 167.[1]

The *Howard* case did not directly concern a forfeiture. Howard appealed from his conviction on a charge of transporting illegally imported drugs. He was arrested while driving a Chevrolet loaded with concealed drugs. The Chevrolet had been left in a designated place, after being driven across the border from Mexico. Howard arrived in the designated area in a Buick automobile, which he parked across the street from the load car. Following his arrest in the Chevrolet, Howard was arrested and searched; the keys to the Buick were taken from him; and, upon search of the Buick, a quantity of heroin was discovered. The case in the Ninth Circuit turned upon whether the search of the Buick was legal. The Court held that it was illegal, rejecting the Government's contention that the search of the Buick was incident to a seizure of the automobile under the forfeiture statutes. The seizure was valid, the Ninth Circuit reasoned, only if the seizing officers had probable cause to believe that the Buick had been used to "facilitate" the transportation of drugs in the Chevrolet. The Court answered that question in the negative, citing *Platt,* and observing that "the seized car was merely the means of locomotion by which the person suspected of participating in illegal drug traffic reached the site of that activity." 423 F.2d at p. 1103.

The facilitation question was considered extensively in *United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H.1974). In that case, the seller of illegal drugs twice used the vehicle to lead a DEA agent to the seller's apartment, where the sale took place. The Court held that such use was insufficient to subject the vehicle to forfeiture under 21 U.S.C. § 881(a)(4). The law requires, the Court held, "a substantially significant connection with criminal activity before an ordinary automobile may be seized and forfeited to the Government." The Court stressed that the drugs in question were never carried or transported in the vehicle; that no negotiations for the purchase were carried on in the vehicle; and that no part of the sale was transacted in the vehicle. The Court concluded:

> "The car was merely used to transport the claimant from one location to another, and the fact that allegedly criminal activity occurred at the latter location is without significance for the purpose of the Government's petition for forfeiture in this case." 378 F.Supp. at 1206.[2]

In *United States v. One 1974 Cadillac Eldorado,* 407 F.Supp. 1115 (S.D.N.Y.1975), Judge Weinfeld of this Court expressed his

---

1. An earlier forfeiture statute, 49 U.S.C. § 781(a), was involved in *Platt,* but the principles are the same.

2. Before addressing the facilitation question, the court in the *Datsun* case observed:

> "It is clear that any intentional transportation or concealment of contraband in a conveyance, no matter how small the amount, will subject the conveyance to forfeiture. (citing cases)." 378 F.Supp. at 1202.

This statement reinforces this court's conclusion that the vehicle at bar is subject to forfeiture for transportation of the amounts of cocaine found on the person of claimant Ramos.

agreement with the conclusion reached in *United States v. One 1972 Datsun, supra,* "that to be forfeited a vehicle must have some substantial connection to, or be instrumental in the commission of, the underlying activity which the statute seeks to prevent." 407 F.Supp. at p. 1116. In the *Cadillac Eldorado* case, the vehicle was used by its owner to drive another individual to the site of inconclusive negotiations for the sale of drugs. Several days later, the individual who had been a passenger in the vehicle met with a seller at a different location, where conditions of the sale were agreed; the vehicle was not used on that occasion, nor was it used to transport anyone to the place of actual sale. Judge Weinfeld held, on these facts, that there had been no "facilitation" by use of the vehicle within 21 U.S.C. § 881(a)(4). The opinion observes:

> "The evidence does not establish that the Cadillac car transported Montanez to the place of negotiation or the place of delivery." 407 F.Supp. 1116.

Citing *United States v. One Dodge Coupe,* 43 F.Supp. 60 (S.D.N.Y.1942), Judge Weinfeld states:

> "However, where the contraband is not in the vehicle, what 'constitutes "facilitation" is a question of degree, which is in turn a question of fact not readily susceptible to generalization.'" 407 F.Supp. at 1116.[3]

In *United States v. One Dodge Coupe, supra,* one Granza drove the Dodge to a location where a Pontiac was already stationed; Granza left the Dodge, entered the Pontiac, and was driven by another individual around the block back to the place where the Dodge was parked; thereupon Granza stepped out of the Pontiac carrying a paper bag, which was found to contain heroin. Judge Rifkind held for this Court,

that, on these facts, the vehicle was subject to forfeiture:

> "Was the Dodge used in facilitating the transportation of contraband? By bringing Granza part of the distance over which the contraband would otherwise have to travel in order to reach him, it made that task less difficult and lessened the labor thereof and I, therefore, answer that question in the affirmative.

> "This answer is in part prompted by the inescapable inference which must be drawn from the fact that the meeting of the Dodge and the Pontiac was not accidental but prearranged. In other words the Dodge was an instrumentality in a prearranged scheme of transportation which was not completed by reason of the intervention of the narcotic agents." 43 F.Supp. at 62.[4]

The rationale of *United States v. One Dodge Coupe, supra,* was applied to decree forfeiture in *United States v. One 1941 Pontiac Sedan,* 83 F.Supp. 999 (S.D.N.Y. 1948), in which no drugs were present in the vehicles, but they were used to transport a drug dealer to a place where a sale was to be consummated. The Court stated generally:

> "If an automobile is used by a drug peddler as a 'means' of going to places to negotiate sales of narcotics and as a means of driving therefrom, to later on have the orders filled, and as a means for the joint transportation of himself and a confederate, who makes the delivery of the narcotics for the peddler, the automobile is in my opinion being used to facilitate the sale of narcotics, even though narcotics are not actually carried in the car."

> \*   \*   \*   \*   \*   \*

> "Where it has been shown by the evidence that the dope peddler has used the

---

3. An appeal by the Government from Judge Weinfeld's denial of forfeiture is pending.

4. Judge Rifkind also observed in the *Dodge Coupe* case:

> "In any event sufficient was shown to constitute probable cause for the institution of the

proceedings. The burden of explanation, therefore, fell upon the claimant. Since it offered no proof it failed to carry that burden and a decree of forfeiture must, therefore, be granted." 43 F.Supp. at 62.

I have reached a comparable conclusion in the case at bar.

automobile to carry on his illicit traffic, the automobile is subject to seizure and forfeiture. The automobile need not be used in the actual transportation of the narcotics in order to be subject to seizure and forfeiture." 83 F.Supp. at pp. 1001–2.

In the *Pontiac Sedan* case, this Court distinguished *Platt v. United States, supra,* on the basis that *Platt* "did not involve an automobile of a dope peddler"; the Court observed further that when a dope peddler uses his vehicle to get to or from places of sale or delivery, the vehicle "is an operating tool of the dope peddler's trade." 83 F.Supp. at p. 1002.

It is apparent from this discussion that the cases in this area cannot all be reconciled. Some courts have denied forfeiture, even where the vehicle was being used by a participant in an illegal drug transaction to transport him to or from the place of sale or delivery. However, as indicated by the two last-quoted cases, the tendency in this Court has been to construe the forfeiture statutes more broadly and to decree forfeiture of a vehicle under the "facilitation" arm of the statute when it is used to transport an individual directly involved in the illicit transaction to or from the place of the transaction. Judge Weinfeld's opinion in *United States v. One 1974 Cadillac Eldorado, supra,* is not inconsistent with that approach; as was observed in the discussion of that case, the vehicle was not used to transport anyone to the situs of the actual sale or delivery of the drugs.

In the case at bar, the Mercury Monarch was used by claimant Ramos, who shipped the drugs from Puerto Rico, to drive to the place of consignment in the Bronx, in order that Ramos could make sure that the delivery had been safely accomplished.[5] One is reminded of the plea of Cock Robin in mitigation: "I shot an arrow into the air; it fell to earth I know not where." In Ramos's case, a fair paraphrase would be: "I shipped four crates of drugs by air; and

then made sure that they got there." The use by Ramos of his vehicle in connection with that latter activity is sufficient in the Court's opinion, to subject the vehicle to forfeiture under the provisions of 21 U.S.C. § 881(a)(4), which condemns vehicles to forfeiture if they are used "*in any manner* to facilitate the transportation, sale, receipt . . ." of controlled substances (emphasis added). While I concur with the rule that, to be subject to forfeiture, "a vehicle must have some substantial connection to, or be instrumental in the commission of, the underlying activity which the statute seeks to prevent", *United States v. One 1974 Cadillac Eldorado, supra,* the fact that the vehicle is both owned and used by a participant in the underlying activity, and in furtherance of its objectives, is in my opinion of considerable significance in striking the balance. This conclusion is in accord with the express purpose of Congress in enacting 21 U.S.C. § 881; Congress observed, in passing amendments to the statute in 1950, that: "Enforcement officers of the Government have found that one of the best ways to strike at commercialized crime is through the pocketbooks of the criminals who engage in it." H.Rep.No.2751, 81st Cong., Second Sess., 1950 U.S.Code Cong.Serv. 2952, 2953–54.

■ Thirdly, the Government contends that the vehicle is subject to forfeiture because it was intended to be used to transport the marijuana away from the Jerome Avenue address. The Court is asked to infer that fact from the presence of the empty green suitcase, with a residue of marijuana, in the trunk of the vehicle. That inference is, in my opinion, too speculative to support forfeiture of the vehicle if that were the only ground put forward by the Government. However, for the reasons previously stated, the vehicle is subject to forfeiture on independent grounds.

In the light of this discussion, I make the following Conclusions of Law:

---

**5.** I am mindful of Ramos's denial of knowledge, in his answer to the Government's interrogatories, that the crates contained marijuana. I do not accept that denial, particularly in the light of Ramos's plea of guilty in the District of Puerto Rico.

(1) This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355 and pursuant to 21 U.S.C. § 881.

(2) On September 8, 1976, the Monarch, was used by Ramos to transport and to facilitate the transportation, sale, receipt, possession and concealment of marijuana and cocaine which are controlled substances pursuant to 21 U.S.C. § 812.

(3) The Monarch is subject to forfeiture under the provisions of 21 U.S.C. § 881.

(4) The Government has demonstrated probable cause to initiate this action. 19 U.S.C. § 1615. *United States v. One 1971 Porsche Coupe,* 364 F.Supp. 745 (E.D.Pa. 1973).

(5) Ramos has failed to demonstrate a valid defense to the Government's claim for forfeiture of the Monarch. 21 U.S.C. § 885.

(6) Judgment shall be entered in favor of the Government and against the Monarch, forfeiting the Monarch to the United States. Costs, including court costs, and the fees and expenses incurred in the seizure and storage of the Monarch shall be entered against the claimant Ephraim Ramos.

It is So Ordered.