**UNITED STATES of America,**
**Libelant,**

v.

**ONE 1965 CADILLAC 2-DOOR COUPE,**
**Serial No. G51-11096, Respondent.**

**Civ. A. No. 65-1083.**

United States District Court
W. D. Pennsylvania.

Dec. 1, 1966.

———◇———

Gustave Diamond, U. S. Atty., by Vincent A. Coliani, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Alfred V. Papa, New Castle, Pa., for owners of Cadillac, John L. Draper and Mary Lou Draper.

Thomas V. Mansell, Mansell & McKee, New Castle, Pa., for first Nat. Bank of Lawrence County, New Castle, Pa.

## OPINION

DUMBAULD, District Judge.

At 10:00 P.M. on May 1, 1965, at a tavern in Lawrence County, one Frank Draper got into a fight with one Pete Shusman. Draper was ejected, and apparently could not get his jeep started and went home on foot. Later he returned in his Cadillic, the subject of the instant condemnation proceedings.

When Draper got out of his car he was struck three blows on the head by an assailant whom he did not see but thought to be one Frank Carna, who had threatened Draper because Draper's family favored Carna's wife in a domestic dispute. After the incidents of the night in question Carna told Mrs. Draper "next time you will both get it". Carna had in his firearms collections a German Lueger and other war souvenirs.

Someone terrorized the tavern that night by firing about thirteen times from a German semiautomatic rifle. Spent shells were later recovered by State Trooper August V. LeClair twelve feet

from the rear of the building. One was found in Draper's car.

Trooper LeClair had come to the tavern earlier following the Draper-Shusman fight. When he returned after the shooting, Draper, dazed from his wounds, pulled his Cadillac up a short distance in the parking lot to the trooper's car, seeking help. The cars were so close the trooper could not open the door of his car, and at his request Draper moved the Cadillac away. After helping Draper out of the Cadillac, trooper LeClair found in the car the German semiautomatic rifle. This weapon was not registered as required by federal legislation, 26 U.S.C. § 5801 et seq.

Upon these facts the Government seeks forfeiture of the Cadillac in accordance with 49 U.S.C. §§ 781 and 782

It is there provided:

"(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in or upon any vessel, vehicle, or aircraft, or upon the person of anyone in or upon any vessel, vehicle or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

"(b) As used in this section, the term 'contraband article' means—

*    *    *    *    *    *

(2) Any firearm, with respect to which there has been committed any violation of any provision of the National Firearms Act or any regulation issued pursuant thereto * * *"
§ 782.

"Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited * * *"

■ By virtue of 49 U.S.C. § 784, the burden of proof is upon the claimant provided that probable cause be shown by the government for instituting the forfeiture suit, in accordance with 19 U.S.C. § 1615.

■ While we find probable cause for institution of suit, we find against the government on the merits. Forfeitures are odious, and the facts in the case at bar do not establish a violation of the provisions of 49 U.S.C. §§ 781 and 782 in the light of Congressional intent.

In a technical sense it is perhaps arguable that the motion of the Cadillac in the parking lot while the gun was in the car constitutes transportation of the gun.

But the forfeiture provision of 49 U.S. C. § 782 requires as a condition of forfeiture that (1) the vehicle be used in violation of 49 U.S.C. § 781 or (2) that the vehicle be one in which or by means of which such violation takes place. In other words, the vehicle must be used as a means or instrumentality in connection with the violation of the prohibitions in 49 U.S.C. § 781.

■ To transport a contraband article, within the meaning of that section, which is directed primarily against infractions of the customs laws and traffic in narcotics, firearms, and counterfeit money, undoubtedly means to provide transportation as a means of accomplishing or furthering an offense of that sort. The transportation must be a substantial incident of the traffic in contraband articles, although of course, as stated in the eloquent dissent of Justice Holmes in Hammer v. Dagenhart, 247 U.S. 251, 279–280, 38 S.Ct. 529, 534, 62 L.Ed. 1101 (1918): "It does not matter whether the supposed evil precedes or follows the transportation. It is enough that in the opinion of Congress the transportation encourages the evil."

■ The mere local movement in a parking lot, of a car containing a weapon

accidentally dropped by an assailant during the scuffle, or perhaps "planted" there to get rid of a "hot" item or to divert the attention of investigators, does not seem to rise to the dignity of transportation. The maxim *de minimis non curat lex* applies.

The Government perhaps contends that Draper had the gun in the car when he returned from his home to the parking lot, and that it was he who fired the shots at the tavern. But we do not draw this inference, as it is not supported by any testimony, and is contradicted by the testimony of Dr. James B. Medlock, who treated Draper, to the effect that he could not have driven the car in his condition after receiving the three blows to his head with a blunt instrument.

From incidental remarks made at the trial, it seems that Draper was charged with, but acquitted of, some offense in the State courts. This circumstance perhaps suffices to negate any supposition that Draper may have fired the shots, and hence may have transported the gun in his car from his home.

The only transportation actually shown by the testimony is the local movement in the parking lot, and this is too interstitial in character to constitute a violation subjecting the vehicle to forfeiture.

This opinion shall be deemed to constitute the Court's findings of fact and conclusions of law.

## ORDER

And now, this 1st day of December, 1966, for the reasons set forth in the foregoing opinion,

It is ordered that the suit of the United States for forfeiture of one 1965 Cadillac 2-Door Coupe, Serial No. G51–11096, be and the same hereby is dismissed, and that said vehicle be delivered to the claimants, John L. Draper and Mary Lou Draper, the owners thereof, free of any and all claims of the United States arising out of the seizure thereof.