**UNITED STATES of America**

v.

**ONE 1972 DATSUN, VEHICLE IDENTI-FICATION NO. LB1100355950.**

**Civ. A. No. 74–126.**

United States District Court,
D. New Hampshire.

July 18, 1974.

Robert A. Schwartz, Asst. U. S. Atty., Dist. N. H., for plaintiff.

Edward A. Jordan, Leonard Professional Ass'n, Nashua, N. H., for defendant.

## OPINION

BOWNES, District Judge.

This case arises out of the seizure of claimant's Datsun in connection with his arrest for the sale of Lysergic Acid Diethylamide (hereinafter LSD), a narcotic drug. The Government has filed a Complaint for Forfeiture claiming that the car was used to facilitate the illegal sale of a controlled drug and that the car should, therefore, be forfeited to the United States. 21 U.S.C. § 881. Jurisdiction is based on 28 U.S.C. § 1355.

At a hearing on June 17, 1974, claimant [1] challenged the forfeiture. Although claimant's counsel was not entirely clear about the nature of his challenge, I treat his oral motion as a motion for judgment on the pleadings. Fed.R.Civ.P. 12(c). In this way, claimant will not be prejudiced or bound by admission of the pleadings in this case in any subsequent criminal prosecution arising out of the events surrounding the claimed forfeiture.

### A.  THE FACTS

Since the case is before me on what is essentially a motion to dismiss, I must take the facts as pleaded. In pertinent part, the Government's complaint reads as follows:

### III.

On January 23, 1974, in Manchester, New Hampshire, Rick Stoudt and Special Agent Daniel A. Staffieri of the Drug Enforcement Administration agreed that Staffieri would follow Stoudt to his apartment, where Stoudt would sell Staffieri approximately 950 dosage units of LSD (Lysergic Acid Diethylamide).

### IV.

Rick Stoudt operated the Datsun so as to deliberately lead Special Agent Staffieri to Stoudt's apartment in Nashua, New Hampshire.

### V.

At the apartment Staffieri purchased from Stoudt, 950 dosage units of LSD (Lysergic Acid Diethylamide) pursuant to the aforementioned agreement of January 23, 1974.

### VI.

On March 13, 1974, Stoudt agreed to sell Staffieri 5000 dosage units of LSD (Lysergic Acid Diethylamide); Stoudt told Staffieri to meet him at the Berkshire Master's Motor Inn in Nashua, New Hampshire.

### VII.

Staffieri met Stoudt as agreed at the Berkshire Master's Motor Inn, Nashua, New Hampshire and then followed Stoudt, who was driving the Datsun, to Stoudt's apartment in Nashua, New Hampshire, where Stoudt delivered on March 13, 1974, 5000 dosage units of LSD to Staffieri pursuant to the prior agreement.

[1]. Originally, the Nashua Trust Company, which has a security interest in the Datsun, objected to the Government's forfeiture petition. However, when the United States Attorney granted its Petition for the Remission of Forfeiture in part, the Trust Company withdrew its objection to the forfeiture proceedings.

## VIII.

Stoudt was arrested and the Datsun seized following the delivery of the 5000 dosage units of LSD.

At the hearing, counsel agreed that the LSD was never transported by or concealed in the Datsun.

## B. THE LAW

Although forfeiture statutes appear in a number of places in the United States Code and state statutory schemes, the statute involved here is 21 U.S.C. § 881:

The following [2] shall be subject to forfeiture to the United States and no property right shall exist in them:

\*　　\*　　\*　　\*　　\*　　\*

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [contraband] . . . . 21 U.S.C. § 881 (a)(4).

At the outset, I point out that this case does not involve the oft-litigated innocent third-party problem. The innocent third-party problem arises where, unknown to its owner, and without his permission, a vehicle, lawfully in the possession of another,[3] is used for purposes which subject the vehicle to forfeiture.[4] In this case the question of law, as succinctly stated by the Assistant United States Attorney, is whether, on the facts alleged in the complaint, the Datsun was used to "facilitate the illegal sale of a controlled substance in violation of Title 21, U.S.C. § 881." Complaint, Par. II. The determination of this issue depends on the construction given to the statute.

■ A number of courts have had the opportunity to construe the scope of this forfeiture statute and others similar to it. It is clear that any intentional transportation or concealment of contraband in a conveyance, no matter how small the amount, will subject the conveyance to forfeiture. United States v. One 1971 Porsche Coupe Auto, 364 F. Supp. 745, 748–749 (E.D.Pa.1973); see Associates Investment Co. v. United States, 220 F.2d 885 (5th Cir. 1955); United States v. Oldsmobile Coupe Auto, 67 F.Supp. 686 (S.D.Cal.1946); cf. United States v. One 1965 Cadillac 2-Door Coupe, 260 F.Supp. 761 (W.D.Pa. 1966). In addition, use of a vehicle as a place for conducting negotiations for or transacting any portion of a sale is sufficient to subject the vehicle to forfeiture.[5] United States v. One 1950 Buick Sedan, 231 F.2d 219 (3d Cir. 1956); United States v. One 1950 Chevrolet 4-Door Sedan, 215 F.2d 482 (10th Cir. 1954); United States v. One 1951 Oldsmobile Sedan, 129 F.Supp. 321 (E.D. Pa.1955); United States v. One 1951 Oldsmobile Sedan Model 98, 126 F.Supp. 515 (D.Conn.1954); United States v. Ford Coupe Automobile, 83 F.Supp. 866 (S.D.Cal.1949). Use as a look-out or decoy vehicle in a convoy will also render the vehicle subject to forfeiture. United States v. One 1952 Lincoln Sedan, 213 F.2d 786 (5th Cir. 1954); United States v. One Dodge Sedan, 28 F.2d 44 (D.Cal. 1928).

■ Courts have been reluctant to expand the notion of "facilitation" beyond the above cases, in which the Gov-

---

2. The statute provides exceptions for common carriers and stolen conveyances.

3. See note 2 supra.

4. Until recently many courts have allowed forfeiture under these circumstances. However, a recent Supreme Court case, United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), may have modified the law in this area. See United States v. One 1971 Porsche Coupe Auto, 364 F.Supp. 745 (E. D.Pa.1973). Although Coin & Currency did not deal with the precise issue involved here, the trend it represents and the principle it develops are fully applicable to this case and are discussed infra.

5. Such use of a vehicle would, for example, serve to inhibit surveillance of these aspects of the illegal activity.

ernment has been able to establish a concrete, direct, and instrumental use of the vehicle in some aspect of the underlying criminal activity.[6] Where drugs have not been present in the vehicle and the vehicle has not been used as a place of negotiating or consumating any portion of the deal, many courts have not allowed forfeiture. Although these cases have most often involved the omnipresent judicial distaste for innocent third-party forfeiture,[7] the cases make it clear that

> [t]he mere fact that a car is used by a law violator does not establish the requirement for "facilitation." United States v. One 1952 Ford Victoria, 114 F.Supp. 458, 460 (N.D.Cal.1953).

Apposite to this case is Simpson v. United States, 272 F.2d 229 (9th Cir. 1959). In *Simpson*, claimant allegedly operated several bookmaking establishments and had been seen in her car at one such place. In addition, a police officer testified that claimant had offered, and at a later date actually had made, a bribe to him. On both occasions, the vehicle in question was used. In denying the Government's petition for forfeiture, the Court held:

> It is established by United States v. Lane Motor Co., 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622, affirming 10 Cir., 199 F.2d 495, and United States v. Plymouth Coupe, 3 Cir., 182 F.2d 180, that an automobile used only for the personal convenience of the owner as transportation to the site of the illicit operation is not subject to seizure. 272 F.2d at 231.

United States v. Lane, relied on by the *Simpson* court, involved a petition for the forfeiture of vehicles that

> . . . had each been used by the operator of an illegal distillery to

drive a number of miles from his home and then parked at a point one-half mile or more from the distillery, the operator walking the rest of the way. 344 U.S. at 630, 73 S.Ct. at 460.

There was no proof that the vehicles had been used to transport or conceal contraband. In denying the petition for forfeiture, the Court held:

> We think it clear that a vehicle used solely for commuting to an illegal distillery is not used *in* violating the revenue laws. 344 U.S. at 631, 73 S.Ct. at 460. [Emphasis in original.]

*See also* Platt v. United States, 163 F.2d 165 (10th Cir. 1947).

A reading of these forfeiture cases highlights the difficulty courts have had in establishing guidelines which clearly or helpfully demarcate the contours of vehicular "facilitation." In part, this difficulty stems from the traditional breadth and long grasp historically afforded to the forfeiture doctrine. Juxtaposed against an expanding notion of due process and our multifaceted and pervasive use of and dependence on the automobile, the follies of the fictional forfeiture doctrine have become apparent. Until recently, the judicial response to this anachronism has been the case-by-case analysis outlined above. In "harsh" circumstances, courts have balked at ordering forfeiture, United States v. One 1950 Buick Sedan, *supra*, 231 F.2d at 223; United States v. One 1971 Porsche Coupe Auto, *supra*, 364 F. Supp. at 749, or simply held that factual circumstances, admittedly coming within the technical scope of a forfeiture statute, did not "rise to the dignity" of a violation, United States v. One 1965 Cadillac 2-Door Coupe, *supra*, 260 F.Supp. at 763; *see* Platt v. United States, *supra*. Although this manner of stewardship

6. However, although most courts have grounded forfeiture on direct use of the vehicle to assist in the accomplishment of an aspect of the underlying crime, at least one court has allowed forfeiture where, although not intimately involved in any criminal activity, a vehicle was used repeatedly to lay the groundwork for what appeared to be a pattern of illicit drug trafficking. United

State v. One 1941 Pontiac, 83 F.Supp. 999 (S.D.N.Y.1948).

7. *See* note 4 *supra* and accompanying text. *See* Platt v. United States, 163 F.2d 165 (10th Cir. 1947); United States v. One Porsche Coupe Auto, *supra; cf.* United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041 (1971).

does not easily lend itself to synthesis, one major principle seems to emerge from all the cases: to be forfeited, a vehicle must have some substantial connection to, or be instrumental in, the commission of the underlying criminal activity which the statute seeks to prevent. In other words, it is appropriate in every forfeiture case to ask

> whether the use of the car as established by the record [is] so connected with the allegedly illicit [activity] as to subject the car to forfeiture. Simpson, *supra*, 272 F.2d at 230.

This requirement in vehicle forfeiture cases of what may be termed a "substantial and/or instrumental connection," although somewhat interstitially developed by the lower courts, is well supported by four independent considerations: (1) a recent Supreme Court case in the forfeiture field; (2) the legislative history surrounding the 1950 Amendments to 49 U.S.C. § 782 the general forfeiture provision of the United States Code Chapter on Transportation; (3) the penal nature of vehicle forfeiture statutes; and (4) common sense.

■ First, until recently courts have not seriously questioned the constitutionality of the forfeiture concept.[8] However, in United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041 (1971), the Supreme Court appears to have reversed this trend. *Coin & Currency* dealt with the application of the Fifth Amendment guarantee against self-incrimination in a forfeiture proceeding which arose out of and was predicated upon a conviction for "failing to register as a gambler and to pay the related gambling tax required by federal law, 26 U.S.C. §§ 4411, 4412,

4901." 401 U.S. at 716, 91 S.Ct. at 1042. In holding that

> the fifth amendment applies in forfeiture proceedings to preclude forfeiture to the same extent that it would preclude a criminal conviction for the conduct on which the forfeiture proceeding is predicated, United States v. 1964 Ford Thunderbird, 445 F.2d 1064, 1069 (3d Cir. 1971).

the Supreme Court

> recognized the difficulty of reconciling the broad scope of traditional forfeiture doctrine with the requirements of the Fifth Amendment. [Citing cases.] United States v. United States Coin & Currency, 401 U.S. 715, 721, 91 S.Ct. 1041, (1971).

Although the extent to which the Supreme Court has modified the forfeiture doctrine remains to be seen,[9] *Coin & Currency* does establish that "property shall be seized only if its owner significantly participated in the criminal enterprise." 401 U.S. at 719, 91 S.Ct. at 1044. In the course of its opinion, the Court further noted:

> When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise. 401 U.S. at 721–722, 91 S. Ct. at 1045.

The relevance of *Coin & Currency* to this case is the Supreme Court's concern that, where forfeiture is based on an underlying criminal enterprise, the scope of forfeiture be limited, in its penal effect, to those persons substantially involved in criminal activity. The broad holding of *Coin & Currency* is that forfeiture statutes must be limited in reach

---

8. Van Oster v. Kansas, 272 U.S. 465, 467–468, 47 S.Ct. 133, 71 L.Ed. 354 (1926), and cases cited therein; *see* Associates Investment Co., *supra*, 220 F.2d 888–889; United States v. One 1971 Porsche Coupe Auto, *supra*, 364 F.Supp. at 749; Pearson Yacht Leasing Co. v. Massa, 363 F.Supp. 1337, 1341–1342 (D.P.R.), prob. jurisd. noted sub. nom. Calero-Toledo v. Pearson Yacht Leas-

ing Co., 414 U.S. 816, 94 S.Ct. 69, 38 L.Ed. 2d 48 (1973).

9. On the question of whether or not *Coin & Currency* is a constitutional decision, *compare* Pearson Yacht Leasing Co. v. Massa, 363 F.Supp. 1337 (D.P.R.) prob. jurisd. noted sub. nom. Calero-Toledo v. Pearson Yacht Leasing Co., 414 U.S. 816 (1973) *with* Note, 51 Tex.L.Rev. 1411 (1973).

to those situations which in some way have a significant relation to the underlying criminal activity which Congress has sought to penalize and prevent. In this case, that principle supports the thesis that: to be forfeited, a vehicle must have some substantial connection to, or be instrumental in the commission of, the underlying activity which the statute seeks to prevent.

■ Second, the legislative history surrounding the 1950 Amendments to 49 U.S.C. § 782 makes clear that a primary goal of this forfeiture statute is to cripple illegal drug trafficking and narcotics activity. Before the Amendments, vehicles used in trafficking narcotics were not subject to forfeiture unless it could be shown that the narcotic drug was possessed with intent to sell, that it was offered for sale, or that it was actually sold in violation of the tax laws (i. e., without the proper Internal Revenue stamps). 53 Stat. 1291 (1939). This statutory scheme made forfeiture of vehicles regularly used in the operation of illegal narcotics activity impossible in cases involving stolen narcotics, which normally bore proper stamps, and marijuana, the sale of which required the transferee to pay the appropriate tax and affix the proper revenue stamps. The 1950 Amendments broadened the definition of contraband to include stolen narcotics and to allow forfeiture based solely on illegal acquisition or possession, without requiring proof of sale or intent to sell.

The House Report is especially enlightening on Congress' intent in enacting the amendments:

In recent years there has been an increase in the number of narcotics thefts, robberies, and burglaries from drug stores, physicians' offices, and other places from which narcotic drugs are dispensed. The perpetrators of these crimes rely to a large extent on the use of high-powered automobiles to make their escape from the jurisdiction in which the crime took place.

\* \* \* \* \* \*

Enforcement officers of the Government have found that one of the best ways to strike at commercialized crime is through the pocketbooks of the criminals who engage in it. Vessels, vehicles, and aircraft may be termed the operating tools of dope peddlers, and often represent major capital investments to criminals whose liquid assets, if any, are frequently not accessible to the Government. Seizure and forfeiture of these means of transportation provide an effective brake on the traffic in narcotic drugs. The proposed legislation is intended to provide additional means of combating this nefarious activity. 1950 U.S. Code Congressional Service, pp. 2953–2954.

The legislative history surrounding these Amendments clearly shows that a purpose of vehicle forfeiture in the enforcement of the narcotics laws is to prevent the flow of narcotics by depriving narcotics peddlers of the "operating tools" of their trade, thereby financially incapacitating the illegal narcotics activity.[10] That purpose will not be greatly furthered by forfeiture in this case. The Government has not alleged that claimant uses the Datsun as part of the modus operandi of an ongoing criminal narcotics enterprise, nor has it alleged that the Datsun has been specifically adapted for illicit narcotics activity. Absent such allegations, it is not clear that forfeiture of the vehicle will help to prevent the illegal sale of narcotics any more than forfeiture of any number of claimant's personal effects which facilitate his ability to deal with such commonplace and everyday problems as transportation.

10. On the question of whether "striking at commercialized crime . . . through the pocketbooks of criminals who engage in it" in this manner and under these circumstances is a permissible exercise of legislative power, I intend no comment and specifically reserve judgment.

██ Third, although there has been much debate over the question of whether forfeiture statutes are penal or remedial in nature, forfeiture statutes such as 21 U.S.C. § 881(a)(4), which authorizes seizure of derivative contraband (i. e., articles which are "not intrinsically illegal in character," but derive their contraband status only from their association with criminal activity) must be strictly construed. Unlike the seizure of *per se* contraband, "the possession of which, without more, constitutes a crime," and the seizure of which directly promotes the remedial goals of a forfeiture scheme, seizure of derivative contraband may or may not be remedial, depending on the nature and substantiality of its association with the underlying illegal activity. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S. Ct. 1246, 14 L.Ed.2d 170 (1965). Therefore, it is important to require that derivative contraband be substantially and instrumentally connected with illegal behavior before it is subject to forfeiture. Otherwise, the Government, by electing to proceed against suspects via the forfeiture route, could deprive citizens of the constitutionally-mandated safeguards which surround the criminal process. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). *See generally* cases cited in 25 Modern Federal Practice Digest, Forfeitures § 1 (1960); United States v. One 1951 Oldsmobile Sedan, *supra*, 126 F.Supp. at 516; Coin & Currency, *supra*, 401 U.S. at 717–722.

██ Fourth and last, it must be noted that the use of the automobile in our society is pervasive. There is little activity which is not "facilitated" by the use of a car in some fashion. For this reason, and because a car by itself is not contraband, common sense dictates that the law require a substantially significant connection with criminal activity before an ordinary automobile may be seized and forfeited to the Government.

### C. SUMMARY

The allegations in this case make it clear that LSD was never carried or transported in the Datsun, that no negotiations for the purchase were carried on in the car, and that no part of the sale was transacted in the car. In fact, the narcotics agent himself never entered the Datsun prior to claimant's arrest. The Datsun's only connection with the underlying sale of LSD was claimant's use of the Datsun on two occasions to lead the narcotics agent to where a sale was made. The Government has not alleged that the Datsun is an "operating tool of [a] dope peddler" in an ongoing illegal narcotics operation, and it does not appear that the use of the Datsun was instrumental to the illegal transaction underlying this forfeiture claim. The car was merely used to transport the claimant from one location to another, and the fact that allegedly criminal activity occurred at the latter location is without significance for the purpose of the Government's petition for forfeiture in this case.

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted. The case is dismissed, and the automobile shall be returned to its owner.

So ordered.