UNITED STATES of America, Plaintiff,

v.

ONE 1976 BUICK SKYLARK, 2-DOOR COUPE, VEHICLE IDENTIFICATION NO. 4W27C6K148647, its tools and appurtenances, Defendant,

and

Judi Klein, Intervenor.

Civ. A. No. 77-K-1129.

United States District Court,
D. Colorado.

July 27, 1978.

Joseph F. Dolan, U. S. Atty., Denver, Colo., for plaintiff.

Marshall Quiat, Denver, Colo., for Intervenor.

## MEMORANDUM OPINION, ORDER and JUDGMENT

KANE, District Judge.

This is an action for forfeiture of a vehicle allegedly used "to facilitate the transportation, sale, receipt, possession, concealment, purchase, barter, exchange or giving away of a quantity of cocaine, a controlled substance within the meaning of 21 U.S.C. § 812 and 21 U.S.C. § 881(a)(1)." The case was tried to the court upon written stipulations of facts submitted by the plaintiff and the intervenor on July 13, 1978.

The facts stipulated are as follows:

1. The appraised value of the subject vehicle is in excess of $2,500.

2. On October 17, 1977 between the hours of 6:30 p. m. and 10:00 p. m., one Reynauld Huseby used the defendant vehicle for sale of a quantity of cocaine to agents of the Drug Enforcement Administration. During the course of said transaction, Huseby used the subject vehicle to transport and to facilitate the transportation, sale, receipt, possession, concealment, purchase and exchange of a quantity of cocaine, which is a controlled substance within the meaning of 21 U.S.C. § 812 and 21 U.S.C. § 881(a)(1).

3. The intervenor, Judi Klein, is the registered owner of the defendant vehicle, having received the vehicle as a gift from her father.

4. In August 1977 Judi Klein began living with Reynauld Huseby at 4305 Martin Drive, Boulder, Colorado and was living with Huseby on October 17, 1977, the date of seizure. Subsequent to that date Judi Klein and Reynauld Huseby were married. At the time the two resided at 4305 Martin Drive, Boulder, Colorado the defendant vehicle was the predominant means of transportation for both Huseby and Klein and was readily accessible to Huseby, subject to Klein's permission. Further, Huseby had used the vehicle on numerous occasions prior to October 17, 1977.

5. Between 1971 and 1976 Judi Klein was acquainted with Reynauld Huseby and had heard rumors that he was or had been involved in drug trafficking. At some time between August 1977 and October 17, 1977 Judi Klein observed Huseby use what Klein believed to be cocaine at their residence at 4305 Martin Drive, Boulder, Colorado.

6. At the time of the alleged drug transaction, Huseby's possession of the defendant vehicle was a lawful possession and his prior acquisition of the defendant vehicle

was not in violation of the laws of the United States or the State of Colorado in that Klein had given Huseby permission to use said vehicle. Judi Klein asserts, however, that Huseby told her that he intended to use the vehicle to take one Jay Michael Hensen from the Huseby-Klein home in Boulder to Hensen's home in Golden, Colorado and that she did not know Reynauld Huseby intended to use the vehicle in a drug transaction and that had she known she would not have permitted him to take it. Darold Wisdom, Investigator, Drug Enforcement Administration, asserts that during his interview with Judi Klein conducted on March 28, 1978 Judi Klein told him that she did not ask or feel the need to ask Huseby why he wanted to use the subject vehicle on October 17, 1977 and that she did not know the purpose for which he intended to use the vehicle.

7. Shortly after the defendant vehicle was seized, agents of the Drug Enforcement Administration found a blue suede ladies jacket which belonged to Judi Klein and in one of the pockets of the jacket the agents found a small plastic bag which contained a small quantity of cocaine. Judi Klein asserts that she was the owner of the coat but that she had no knowledge of the plastic bag of cocaine.

8. The investigation, arrest and case action involving the purchase of drugs from Huseby on October 17, 1977 from the subject vehicle were directed by Darold M. Wisdom, a detective of the City and County of Denver who is paid by the City and assigned to the Drug Enforcement Administration task force dealing with narcotics in the Denver, Colorado area.

9. The case was filed in the Colorado District Court in and for the City and County of Denver and prosecuted by the Denver District Attorney. No action was brought under the laws of the United States.

In addition to the foregoing stipulations of the parties, the record in the case reveals the following: Complaint was filed with the court on December 12, 1977. On December 13, 1977 the court issued an order for the warrant of the vehicle's arrest. On December 23, 1977 the Administrator of General Services filed an application for delivery of the seized vehicle to the Regional Director of the Drug Enforcement Administration. The application is a printed form which says in pertinent part:

Therefore, pursuant to Section 304 of the Liquor Law Repeal and Enforcement Act (49 Stat. 880; 40 U.S.C. 304(i) [304i], as amended by Section 102(a) of the Federal Property Administrative Services Act of 1949, as amended (63 Stat. 380; 40 U.S.C. § 752(a)), application is made to the Court to order delivery of the above-described property to said agency, viz., the Regional Director, Drug Enforcement Administration, P.O. Box 1860, 316 U. S. Custom House, Denver, Colorado 80201.

The application is devoid of any findings of fact or grounds to show the basis upon which the Administrator of General Services makes the request.

21 U.S.C. § 881 provides for the forfeiture of vehicles which are used, or intended for use to transport or in any manner to facilitate the transportation, sale, receipt, possession or concealment of contraband, including cocaine. The exceptions to the section provide that no conveyance used by any person as a common carrier in the transaction or business is subject to forfeiture unless it appears that the owner or other person in charge of the conveyance was a consenting party or privy to a violation of the subchapter. Further, no conveyance is subject to forfeiture under the instant provisions where the owner can establish that any act or omission in violation of the subchapter was committed or omitted by any person other than such owner when such conveyance was unlawfully in the possession of that person in violation of the criminal laws of the United States or of any state.

The courts have little, if any, discretion in forfeiture cases. (*U. S. v. One 1973 Jaguar Coupe,* 431 F.Supp. 128 (D.C.N.Y.1977)) It is the government's burden to prove that there was probable cause for the institution of a forfeiture action. (*U. S. v. One 1973 Dodge Van,* 416 F.Supp. 43 (D.C.

Mich.1976)) Once established it is the claimant's burden to prove that the forfeiture does not fall properly within the act. (*U. S. v. One 1972 Toyota Mark II*, 505 F.2d 1162 (C.A.Mo.1974))

■ There is no evidence to suggest even the possibility of an absence of probable cause in the instant case. The owner, however, asserts that the circumstances fall within the second exception previously described. In other words the owner states that Huseby was using the vehicle with the consent of the owner; that since the two of them were living together in a family unit the use falls within a domestic purpose and hence an agency is established. Continuing with this analysis Klein asserts that the scope of the agency was to transport a guest from the family home in Boulder to the guest's home in Golden and that the departure from the route and the purpose went beyond the scope of the agency relationship. Hence the agent Huseby was on a frolic of his own and, therefore, unlawfully in possession of the automobile at the time it was used to facilitate the transportation, sale, receipt, possession or concealment of the contraband. This analysis has a certain degree of persuasiveness since under Colorado law an agent who is on a frolic of his own can indeed be found to be in violation of the criminal laws of the State of Colorado with respect to the unauthorized use of the vehicle. (e. g. *See U. S. v. One 1971 Ford Truck*, 346 F.Supp. 613 (C.D.Cal. 1972); '73 C.R.S. 18–4–409; *People v. Rivera*, 185 Colo. 337, 524 P.2d 1082)) However, in the instant case there is no specific restriction indicated in the delegation of use of the vehicle. While it is accepted that Klein did not know the use to which the vehicle was being put at the time in question, Huseby nevertheless had unrestricted authorization. In addition, the scope of agency implicit in the family relationship is not limited to the transportation of guests but rather extends to the use by members of the family for any purpose unless expressly prohibited by the owner of the vehicle.

■ The owner also argues that forfeiture in this case is not permitted since there was no federal prosecution and since the matter does not rise to a level substantiating federal interest or concern. Numerous cases, however, reject this proposition. *See* for example, *U. S. v. One 1972 Datsun*, 378 F.Supp. 1200 (D.C.N.H.1974).

In *United States v. United States Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) forfeiture actions were limited to persons "significantly involved in a criminal enterprise." Three years later the rule was severely wrenched in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). There the Supreme Court upheld the constitutionality of the application of a Puerto Rican forfeiture statute to an innocent property owner who neither alleged nor proved that it did all it reasonably could to avoid having its property put to an unlawful use.

*Calero* was followed by the Eighth Circuit in *U. S. v. One 1973 Buick Riviera*, 560 F.2d 897 (8th Cir. 1977) which found, however, that the father knew his son had previously been arrested for but not convicted of, a narcotics offense. Because of this knowledge, the court held that the father was on notice of the possibility that his son was involved with narcotics. Further, the court held that the father failed to produce any evidence to show that he took any action at all to avoid having his property put to unlawful use. This requirement for some proof of the owner's efforts to prevent unlawful use was underlined by the same court in *U. S. v. One 1972 Toyota Mark II*, 505 F.2d 1162 (1974) when it held that innocence, noninvolvement or lack of negligence of the owner in allowing the vehicle to be used for forfeitable offense are not defenses to the forfeiture action.

■ The facts stipulated in the case at bar clearly show that the intervenor had direct knowledge of Huseby's use of narcotics and notice of his involvement in narcotics trafficking and that she took no steps to avoid having her property put to unlawful use.

While forfeiture actions lend little, if anything, to intelligent discourse or established notions of fair play, the facts presented simply fail to provide any means by which the intervenor can escape their maw. As Mr. Justice Harlan observed in *U. S. Coin & Currency, supra,* 401 U.S. at 719, 91 S.Ct. at 1044:

> Traditionally, forfeiture actions have proceeded upon the fiction that inanimate objects themselves can be guilty of wrongdoing. . . . Simply put, the theory has been that if the object is "guilty" it should be held forfeit. In the words of a medieval English writer, "Where a man killeth another with the sword of John at Stile, the sword shall be forfeit as deodand, and yet no default is in the owner." The modern forfeiture statutes are the direct descendants of this heritage, which is searchingly considered by Mr. Justice Holmes in a brilliant chapter in his book, The Common Law. The forfeiture action in the present case was instituted as an *in rem* proceeding in which the money itself is the formal respondent. More remarkable, the Government's complaint charges the *money* with the commission of an actionable wrong.

While the current state of the law permits no result other than intervenor's having her property taken without just compensation, she may find some solace in knowing that this absurdity is not of modern invention but one which has its roots in medieval superstition and druidism.

■ The final question to be determined is whether the application of the Administrator of General Services for delivery of the seized vehicle to the Regional Director of the Drug Enforcement Administration should be granted. Because of the following reasons the application will be denied.

As previously stated the application of the administrator contains absolutely no facts or grounds to show the basis upon which the application is made. It is axiomatic that the judicial function cannot be exercised *in vacuo.* An application which fails to state the basis upon which it is made is the judicial equivalent of no application at all. If a new application is made the administrator should set forth particular grounds and reasons sufficient to justify the entry of the requested order. In that regard reference should be made to *U. S. v. One 1960 Ford,* 213 F.Supp. 562 (E.D.Tenn. 1962) wherein it is held that a district court has discretionary power to attach restrictions to its order of disposition. There the court authorized delivery to the Commissioner of Internal Revenue, United States Treasury Department, with the restriction that the vehicle could not be used by the agency which had caused it to be seized, the Alcohol and Tobacco Tax Unit.

■ The reasons for such restrictions are obvious and compelling. Forfeitures are not favored and should be enforced only when within both the letter and the spirit of the law; those provisions of forfeiture statutes relating to remission of forfeited vehicles should be liberally construed to effectuate remission. *U. S. v. One 1936 Model Ford V–8 Deluxe Coach,* 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249 (1939). The primary purpose of the instant statute is to cripple illegal drug trafficking and narcotic activity by depriving narcotics peddlers of the operating tools of their trade. *U. S. v. One 1972 Datsun, supra.* By permitting the agency which seized a vehicle to obtain its use and possession through forfeiture proceedings, the prospect of selective enforcement is greatly enhanced and, correlatively, the pursuit of the statutory purpose is frustrated. Conversely, if forfeited vehicles are not routinely delivered to the seizing agency, the risk of abuse is diminished.

The foregoing analysis does not mean, of course, that exigent circumstances could not be shown which would strongly support delivery to the seizing agency. It is precisely such a showing which is missing from the Administrator of General Services application in the instant case. Should such a showing be made the application will be reconsidered. In its absence, however, it is

ORDERED that the Clerk of this Court shall enter judgment for the plaintiff directing that the defendant vehicle be deliv-

ered by the Administrator of General Services to any agency of the United States government except the Drug Enforcement Administration or, in the Administrator's discretion, sold at public sale or other disposition in accordance with law.