UNITED STATES of America, Plaintiff,

v.

ONE 1979 LINCOLN CONTINENTAL VIN: 9Y89S613025, Defendant,

and

Robert J. Headley, Party in Interest.

Civ. A. No. C 81–2122 A.

United States District Court,
N.D. Ohio, E.D.

Nov. 16, 1983.

Carla D. Moore, Cleveland, Ohio, for plaintiff.

William T. Whitaker, Akron, Ohio, for defendant.

## OPINION AND ORDER

ANN ALDRICH, District Judge.

The United States of America brings this *in rem* civil action under 21 U.S.C. § 881 and 49 U.S.C. §§ 781–82 seeking forfeiture of a 1979 Lincoln Continental, which it alleges was used to facilitate the sale of a controlled substance, cocaine. Robert J. Headley, who owns the car, opposes the forfeiture. Upon consideration of the evidence presented at a hearing on June 29, 1982, the Court entered judgment for the plaintiff. Pursuant to Fed.R.Civ.P. 52, the following Findings of Fact and Conclusions of Law are adopted.

Jurisdiction arises under 28 U.S.C. §§ 1345 and 1355 and the forfeiture statutes.

## FINDINGS OF FACT

In late May of 1981, police in Virginia Beach, Virginia learned that Steven Lee Cimino, a suspected drug dealer, was planning to conduct a drug transaction in the Akron, Ohio area. On May 31, they contacted the Akron Police Department with information about the deal.

That evening Cimino engaged the services of a private pilot to fly him in a tan Beechcraft Baron airplane from Virginia Beach to the Akron-Canton airport in Ohio, and then back to Virginia Beach. Aboard the plane with Cimino were the pilot, Hank Nasworthy, and a Virginia Beach undercover police officer, George McClellan, posing as a co-pilot.

Officers of the Akron Police Department, Stark County Sheriff's Office, and Summit County Sheriff's Office cooperated in surveillance of the Akron-Canton Airport. The plane arrived at about 11:30 p.m. and was observed by the law enforcement personnel at the airport. Surveillance continued as Cimino rode in a hotel van to the Sheraton Belden Village Hotel, where he checked into room 302 under the name of Bill Evans.

Three police officers—one from each of the departments involved in the investigation—met with the night manager of the hotel and arranged to use the adjoining room 304 to eavesdrop on Cimino by listening through the wall. At about 2:00 a.m. on June 1, two Akron officers entered room 304 and commenced the surveillance. At approximately 5:00 a.m. they were relieved by two other officers, one of whom was Sergeant Arthur T. Greer.

Greer presented uncontroverted testimony that on that morning Cimino made and received a number of telephone calls. One call was to phone number (216) 753–1564, the Barberton, Ohio residence of Robert Headley, a suspected drug dealer who had been under investigation by police in the Akron area. After speaking to Headley, Cimino told Nasworthy and McClellan that he would be meeting someone at the hotel and instructed them to proceed to the airport and prepare to depart for Virginia at about 11:00 a.m.

Shortly before 11:00 a.m., police saw Headley drive his white 1979 Lincoln Continental into the hotel parking lot. He was observed walking towards the building carrying a large, bulging manila envelope. Headley entered the hotel and proceeded to room 302, where he met Cimino.

Greer continued to listen through the wall of the adjoining room. He testified that Headley told Cimino he had only brought $36,000, prompting Cimino to ask why Headley did not have all the money needed to complete their scheduled transaction. Headley suggested that Cimino accompany him to Cleveland, where Headley could obtain more money and Cimino could get a flight to Virginia Beach. Cimino agreed and telephoned Nasworthy and McClellan to instruct them to return to Virginia Beach without him.

Next Greer heard Headley say "coke" to Cimino, to which Cimino replied "250 a gram" and added, "you can go on it two or three times." The men agreed on payment terms for a purchase. They also discussed Cimino's business contacts, Cimino telling Headley that he travelled frequently to Cleveland and that "I deal with the Cubans ..." Cimino told Headley that the Cubans "can get you Quaaludes in the millions out of Mexico...." Headley then gave Cimino the manila envelope containing $36,000, which he had brought with him.

The two men left the hotel together and proceeded to Headley's car. Police officers testified that Headley carried nothing while Cimino carried matching overnight and garment bags. The bags were placed in the trunk of the car, and the two men drove onto Interstate 77 North, heading towards Cleveland.

Officers from three police cruisers, two from Akron and one from Jackson Township, stopped the car. Officer Covein and Detective Miksch from Akron conducted a search. They discovered the manila envelope, with $36,000 in cash, in Cimino's luggage, and also found a "coke quick test" kit used to test cocaine. The car and its occupants were taken to the Jackson County Police headquarters. The money was counted, but neither Cimino nor Headley ever claimed ownership.

On June 10, 1981, agents of the Drug Enforcement Agency seized the defendant, Headley's 1979 Lincoln Continental. The government notified Headley in writing of the seizure and of his right to petition for remission or return of the vehicle. An advertisement of the seizure was placed in the Akron Legal News on November 18, 1981.

## CONCLUSIONS OF LAW

Cocaine is a controlled substance within the ambit of 21 U.S.C. § 802(16). Forfeiture of vehicles is authorized by 21 U.S.C. § 881(a)(4), which provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2)....

Paragraphs (1) and (2) provide for forfeiture of "[a]ll controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this chapter," 21 U.S.C. § 881(a)(1), and "[a]ll raw materials, products, and equipment" used or intended for illegal use. 21 U.S.C. § 881(a)(2). Similarly, 49 U.S.C. § 782 provides for forfeiture of vehicles which violate § 781(a)(3) by being used "to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article."

Headley contends that forfeiture is impermissible here, first because the government had no probable cause to stop and search the vehicle, and second because the vehicle was not involved in any identifiable criminal activity and did not facilitate any alleged criminal activity.

 The totality of the circumstances—culminating in Headley driving Cimino to Cleveland with $36,000 in cash, with the apparent purpose of acquiring more cash and completing a cocaine transaction—provided the police officers with probable cause to stop the Lincoln Continental after it left the hotel. The subsequent search of

the car and Cimino's luggage that revealed the money and the "coke quick test" kit was proper under *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982), which held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."

Headley's second argument, that use of the car to carry cash to purchase drugs did not "in any manner … facilitate the … sale" of cocaine pursuant to 21 U.S.C. § 881, is also insufficient. Headley relies on *United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H.1974), where the court refused to order forfeiture of a car which twice had been used to lead undercover agents to an apartment where they bought LSD. It applied to § 881 the definition of "facilitation" developed in cases brought under earlier forfeiture statutes. *See Howard v. United States,* 423 F.2d 1102, 1104 (9th Cir.1970) ("[t]he use of an automobile to commute to the scene of a crime does not justify the seizure of that automobile under [49 U.S.C.] Sections 781 and 782"); *Platt v. United States,* 163 F.2d 165 (10th Cir.1947); *see generally United States v. Lane Motor Co.,* 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622 (1953). The *Datsun* court found that a drug transaction is only "facilitated" when 1) drugs are intentionally transported or concealed in a vehicle; 2) negotiations or transactions took place within it; or 3) the vehicle is used as a lookout or decoy vehicle in a convoy. *Id.* at 1202–03 and n. 6.

Two years later, however, the Supreme Court in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) addressed a Puerto Rican statute modeled on § 881 and upheld forfeiture of a yacht although its lessor did not know that his lessee was about to use it to transport marijuana. When the Second Circuit reconsidered § 881 in light of *Calero-Toledo,* it found forfeiture warranted whenever a sufficient nexus exists between a vehicle and a drug transaction. *United States v. One 1974 Cadillac Eldorado Se-*

*dan,* 548 F.2d 421 (2d Cir.1977) (*"Cadillac I "*). There the car was only used to transport the prospective narcotics sellers to a meeting that led to a sale three days later. The court declared itself "loathe to make the forfeiture depend upon the accident of whether dope is physically present in the vehicle. Its use to transport the peddler or his confederates to the scene of the sale or to a meeting where the sale is proposed is sufficient." *Id.* at 426.

The court stated that the history of § 881 mandated a broader reading of "facilitation" than that given in *Datsun* or in cases brought under other forfeiture statutes:

> … [W]hen the Congress enacted section 881 as part of the 1970 [Comprehensive Drug Abuse Prevention and Control] Act it provided for the forfeiture of any vehicle used or intended to be used *"in any manner* to facilitate the transportation … [or] sale" of a controlled substance. Although we have found no legislative history to explain the addition of the language which we have underscored, its employment in a statute specifically addressed to the problem of drug abuse patently indicates the congressional intent to broaden the applicability of the forfeiture remedy it provided. Hence the rule proclaimed by *Datsun,* based upon other statutes as well as section 781, is perforce suspect.

*Id.* at 425 (emphasis in original).

*Cadillac I* declares the appropriate rule for this case. Subsequent cases have ordered seizure of an aircraft which was to be used to transport marijuana, *United States v. One 1945 Douglas (C–54–DC–4) Aircraft,* 461 F.Supp. 324, 325 (W.D.Mo. 1978), and of a Cadillac that was driven, along with $10,000 in cash, to a site from which the driver's departure with cocaine "was the most probable result of the completion of that intended exchange." *United States v. $10,000 Currency,* 521 F.Supp. 1253 (N.D.Ill.1981). Forfeiture has been rejected only where "there was not an antecedent relationship between the vehicle

and the sale of narcotics." *United States v. One 1972 Chevrolet Corvette*, 625 F.2d 1026, 1029 (1st Cir.1980) (forfeiture order reversed where car used three days after drug sale to drive to meeting place to collect money due); *United States v. One 1974 Cadillac Eldorado*, 575 F.2d 344 (2d Cir.1978) (per curiam) (*"Cadillac II"*) (reversing forfeiture of car used to drive drug dealer to basketball game after transaction was completed).

■ When it was stopped and seized, Headley's car was most probably being used to facilitate a pending but uncompleted drug transaction. Under *Cadillac I*, this is a sufficient nexus between the car and the deal to compel the Court to reject Headley's claim to the 1979 Lincoln Continental. Forfeiture of the vehicle is ordered, and judgment is entered in favor of the United States.

IT IS SO ORDERED.