**UNITED STATES of America, Plaintiff,**

v.

**ONE 1983 PONTIAC GRAN PRIX VIN: 2G2AJ37H802244633, Defendant.**

**Civ. A. No. 84–0750.**

United States District Court, E.D. Michigan, S.D.

Feb. 4, 1985.

**894**

Ross I. MacKenzie, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Seymour Floyd, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

SUHRHEINRICH, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment, and Plaintiff's Motion to Dismiss Defendant-Claimant's Claim. Alternatively, Plaintiff seeks summary judgment. The case arises out of a civil forfeiture action brought by the United States against Defendant vehicle for its alleged use in facilitating the transportation and sale of heroin, in violation of 21 U.S.C. §§ 812 and 881(a)(1). The facts giving rise to the forfeiture action are adequately described in both Plaintiff's and Defendant's motions, briefs, and affidavits in support of summary judgment, and are briefly set forth below.

The vehicle subject to the forfeiture action is owned by and titled to Naziem Ayoub, a resident of Ottawa, Ontario, Canada. His wife, Esther, was arrested and subsequently convicted of possession with intent to distribute heroin, and aiding and abetting in the possession with the intent to distribute heroin at Detroit, Michigan on January 19, 1984.

On October 22 and 23, 1983 Esther and Naziem Ayoub's brother, George, travelled from Ottawa to Windsor, Ontario in the defendant vehicle. Prior to crossing the United States border, Esther Ayoub engaged a taxicab to transport her from Canada into the United States. Upon entry into the United States, an Immigration Inspector discovered heroin in Esther Ayoub's suitcase. Esther was placed under arrest at 11:30 a.m. on October 23. She told Customs' agents that she was to meet a man in a black car in front of the Ford Auditorium in Detroit at 1:00 p.m. to transfer the heroin. At 12:05 p.m. Customs inspectors established surveillance at Ford Auditorium and observed the Defendant vehicle. George Ayoub and Sleiman Gharib were identified as occupants of the vehicle. The DEA, in furtherance of their investigation, established a controlled delivery attempt. Esther was placed in a taxicab and proceeded to Ford Auditorium. She arrived at approximately 1:20 p.m. George Ayoub and Gharib waited in the Defendant automobile on Jefferson Avenue almost directly across from her. Eventually, Esther began walking toward the Hotel Pontchartrain as she had been instructed to do. During the walk she was followed very closely by George Ayoub and Gharib in the defendant vehicle. Later George Ayoub and Gharib made their way to her room and met Esther in the Pontchartrain Hotel.

Based upon this factual background the United States seized the defendant vehicle and instituted forfeiture proceedings. Defendant resists the forfeiture action and advances two primary arguments. First, the vehicle was not used "or intended for use to transport, or in any manner, to facilitate the transportation, sale, receipt, possession or concealment of heroin." 21

U.S.C. § 881(a)(1). Defendant's contention rests upon the fact that the vehicle did not contain illegal drugs at any time while in the United States. The government argues that the vehicle was used *in the facilitation of* the transportation or sale of heroin within the meaning of the statute.

Next, the claimant, Naziem Ayoub, defends on the basis that he had no direct knowledge that controlled substances were in the vehicle. He alleges, that as an innocent owner of the vehicle, he should not be subject to this action.

## I.

The first issue to be addressed by the Court is whether the facts attendant to this case sufficiently establish that the vehicle was used in the facilitation of the transportation of narcotics. Defendant argues that at no time while the vehicle was located in the United States did it facilitate the transportation of narcotics within the meaning of 21 U.S.C. § 881(a)(4). The government also relies upon two other forfeiture statutes, 49 U.S.C. § 781 and 19 U.S.C. § 1595a. Each contains similar language. Title 19, United States Code, Section 1595a provides:

> Except as specified in the provisio to section 1594 this title [19 U.S.C. 1594] every ... vehicle ... used in, to aid in, *or to facilitate,* by obtaining information or in any other way, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law, whether upon such ... vehicle ... or otherwise, shall be seized and forfeited.... (Emphasis supplied.)

At issue is whether there is a sufficient nexus between the automobile and the illegal activity. In support of its position, Defendant-Claimant relies on *United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H.1974). In *Datsun* the court denied forfeiture where no drugs were actually transported in the car, nor were negotiations for the sale or purchase of ille-

gal drugs proven conducted in the car. The automobile was only used to lead agents to the place where sales of illegal drugs were eventually made. This, the court held, was not "facilitation" within the meaning of the forfeiture statute.

The *Datsun* decision has, however, been criticized in subsequent cases. In *United States v. One 1974 Cadillac ElDorado Sedan,* 548 F.2d 421 (2d Cir.1977), the court noted:

> However, when the Congress enacted Section 881 as part of the 1970 Act it provided for the forfeiture of vehicles used or intended to be used *"in any manner* to facilitate the transportation ... or sale" of a controlled substance. Although we have found no legislative history to explain the language which we have underscored, its employment in a statute specifically addressed to the problem of drug abuse patently indicates a congressional intent to broaden the applicability of the forfeiture remedy provided. Hence the rule proclaimed by *Datsun,* based upon other statutes as well as Section 781 is perforce suspect.

*Id.* at 425.

In *One 1974 Cadillac ElDorado Sedan,* the court ultimately held that the transportation of a trafficker to the site of the drug sale, or, to a prearranged meeting with a prospective customer where the sale is proposed to be consummated would constitute grounds for forfeiture under the statute. The court noted "where contraband is not in the vehicle, what constitutes facilitation is a question of degree which is in turn a question of fact not readily susceptible to generalization." *Id.* at 427. The courts within the Sixth Circuit similarly have rejected the narrow construction applied in *Datsun.* See *United States v. One 1980 Cadillac ElDorado,* 705 F.2d 862 (6th Cir. 1983); *United States v. One 1979 Lincoln Continental,* 574 F.Supp. 156 (N.D.Ohio 1983).

██ The uncontroverted factual evidence in this case establishes that the defendant vehicle did transport Esther Ayoub from

Ottawa, Ontario, Canada to Windsor, where she was arrested after entering the United States at the Detroit/Windsor border. The evidence also shows that George Ayoub *intended* to transport Esther Ayoub in the defendant vehicle *after* the transaction had been completed, but for the government's intervention and arrest of Esther. In a statement given by Esther Ayoub to Special Agent Joseph Rassey on October 23, 1983, Esther was asked how she intended to get back to Ottawa. She stated: "Well I told him (George Ayoub who was driving the defendant vehicle) to pick me up at one o'clock and I was going to go back with him to Ottawa." (Statement of Esther Ayoub at p. 4.) Further, Esther stated she expected to receive $7,000 for herself and possibly $350,000 to hold for a man in Lebanon. Thus, the uncontroverted evidence establishes that the defendant vehicle was intended to be used to transfer Esther Ayoub and at least her profit from the drug transaction from Detroit back to Ottawa. These facts, plus what this Court believes to be Congressional policy toward a broad interpretation of the forfeiture statutes, as previously outlined in *One Cadillac ElDorado Sedan,* provide a sufficient basis for the forfeiture of the defendant vehicle in this case.

Numerous cases have held that drugs need not actually be found within the forfeited vehicle. In *United States v. One 1979 Lincoln Continental,* the court upheld the seizure and forfeiture of an automobile where the owner possessed $36,000 in cash with the apparent purpose of acquiring more cash and completing a cocaine transaction. The forfeiture of an automobile used to transport two narcotics sellers to a meeting for the negotiation of a sale was upheld in *One 1974 Cadillac ElDorado Sedan.* In *United States v. One Cadillac Coupe DeVille,* 644 F.2d 500 (5th Cir.1981), the court found sufficient cause for forfeiture where the defendant vehicle was used to transport coconspirators to an apartment to negotiate the sale of cocaine. In the instant case, the totality of the circumstances supports the Court's finding that probable cause did exist to support the forfeiture and that there was a sufficient nexus between the vehicle and the illegal activity—the drug transaction. The claimant has failed to meet its burden for the Court to find by a preponderance of the evidence that the defendant vehicle was not used in the illegal drug transaction. *United States v. Twenty-two Thousand, Two Hundred Eighty-Seven Dollars in U.S. Currency,* 709 F.2d 442 (6th Cir.1983); *United States v. Eighty-Three Thousand Three Hundred Twenty Dollars in U.S. Currency,* 682 F.2d 573 (6th Cir.1982).

## II.

■ The claimant next contends that he was an innocent owner of the subject vehicle without knowledge of his wife's illegal use of the automobile. This defense was first submitted to the Attorney General in the form of a *Petition for Remission* which was denied. A companion petition for lienholder General Motors Acceptance Corporation (GMAC) was granted by the Attorney General. The Attorney General's disposition of the Petition for Remission is not reviewable by the District Court. *United States v. One 1961 Cadillac,* 337 F.2d 730 (6 Cir.1964). As the Petition has already been denied, claimant's sole remedy is his "innocent ownership" defense based on constitutional due process grounds.

The United States Supreme Court directly addressed the issue of whether an innocent owner's property could be taken under a forfeiture statute without offending due process protections. In *Calero-Toledo v. Pearson Yacht Leasing Company,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Court reviewed the constitutional limitations of forfeiture statutes. While forfeiture of an innocent owner's property pursuant to a statute was generally held not to be violative of constitutional guarantees, the Court carved out two exceptions. First, the owner of property subject to forfeiture might have a constitutional defense where the subject property was stolen or wrongfully in the possession of another. Second, a defense may arise where

the claimant was uninvolved in and unaware of the wrongful activity, and further, had "done all that reasonably could be expected to prevent the proscribed use of his property." 416 U.S. at 689, 94 S.Ct. at 2080, 40 L.Ed.2d at 471. As no wrongful possession has been pleaded, only the second exception must be evaluated under the facts of this case.

In determining whether a property owner has done all that could be expected to prevent the proscribed use of the property, the court's have generally required some affirmative action on the part of the claimant. In *Calero-Toledo*, the Court rejected the innocent ownership claim of the lessor of a yacht voluntarily entrusted to lessees. The Supreme Court noted that the claimant made no allegation or proof that it had done all that it reasonably could to avoid having its property put to an unlawful use, even though the owner had no knowledge of the unlawful activity for which lessees were employing the yacht. In *United States v. One 1957 Rockwell Aero Commander 680 Aircraft*, 671 F.2d 414 (10th Cir.1982), the claimant acquired title to the defendant airplane some four months prior to its seizure. He did not authorize the use of the airplane nor did he have knowledge when the plane was flown to Mexico and returned with illegal drugs. The court determined that inattentiveness may be deemed negligence and that the claimant had failed to exercise due care in entrusting his property to another, further, that "innocence, in and of itself, is an insufficient defense to forfeiture." *Id.* at 417. On these facts the government's forfeiture of the plane was held to be proper.

Similarly, the estate of John H. Naffke was not allowed to assert an innocent ownership claim where one of two co-executors embezzled funds from the estate, left the country, then illegally attempted to bring a portion of the embezzled funds back into the United States. In holding that the estate had not done all that could be expected within the meaning of the *Calero-Toledo* innocent ownership standard, the court upheld the forfeiture of the funds against an innocent ownership claim by the estate. The court noted that the estate could have taken affirmative acts to prevent the forfeitable offense by setting up an account requiring signatures of both co-administrators for withdrawal of funds. *United States v. Six Thousand Seven Hundred Dollars*, 615 F.2d 1 (1st Cir.1980).

Finally, in *United States v. One 1972 Toyota Mark II*, 505 F.2d 1162 (8th Cir. 1974) the court held that "[t]he innocence, noninvolvement or lack of negligence of the owner in allowing the vehicle to be used for the forfeitable offense is no defense to the forfeiture action." *Id.* at 1165.

■ Here, Mr. Ayoub has failed to affirmatively show he has done "all that reasonably could be expected to prevent the proscribed use of his property." Noninvolvement or lack of negligence is not a proper defense. *United States v. One 1972 Toyota Mark II* at 1165. In fact, Ayoub did little to prevent the proscribed use of his property. He failed to determine precisely where his wife was going in Detroit, whether she and George were driving through or staying overnight, which friend his brother George was visiting and for what purpose, nor ask any other questions about the trip. (Deposition of Naziem Ayoub at pp 15–28.) Ayoub stated that he failed to ask his wife any questions about her trip because he didn't want to interfere in his wife's business, because of friction between them. (Dep. Tr. at 35–37.)

Finally, Naziem Ayoub is in an awkward position to assert an innocent ownership claim. While the vehicle is titled to Naziem Ayoub, the vehicle was purchased with $5,000 from Esther Ayoub's own money. (Dep. Tr. at 50–55.) In addition, Esther used the automobile whenever she needed it and had her own keys to it. These facts further militate against claimant's innocent ownership argument. For the reasons set forth in this opinion, summary judgment shall be entered in favor of the Plaintiff.

An appropriate order in accordance with this opinion will be entered.